LOCKE *v.* LANE & BODLEY CO.

(*Circuit Court, S. D. Ohio* May 29, 1888 )

1. PATENTS FOR INVENTIONS—COMBINATIONS—NOVELTY—HYDRAULIC ELEVATOR VALVES.
   Patent No. 173,653, granted to Joseph M. Locke, February 15, 1876, for improvement in three-way balanced stop-valves for hydraulic elevators, displays invention, since, though the parts used in the combination are old, the combination itself, which is all that is claimed, is new, and produces a new and useful result.

2. SAME—LOCKE PATENT—ANTICIPATION.
   As the Locke patent expressly disclaims graduated valve openings. either broadly or of any specific form, except in combination, and does not claim cup-packing except in combination, that patent is not invalidated by the description of a mine pumping engine designed by M. Junkes, contained in Rankin's Manual of the Steam-Engine and other Prime Movers, (5th Ed., London, 1870,) p. 140 *et seq.*, or by the description of cup-packing on page 128 of the same volume.

3. SAME.
   The patents to Dunlap, No. 132,526, October 29, 1872, for improvement in balanced valves, and to Vaughn, No. 143,266, September 30, 1875, for improvement in balanced valves for hydraulic cranes, do not anticipate the Locke improvement.

4. SAME—WHO ENTITLED TO—BURDEN OF PROOF.
   In a suit for infringement of patent, where complainant testifies that he devised the improvement patented before he entered defendant's employment, and defendant testifies that certain changes in the design were made after such employment, at his suggestion, and were not the sole production of the complainant, which is denied by complainant, the burden of proof being on defendant. the invention held to be that of complainant.

5. SAME — LICENSE — TO PARTNERSHIP—TRANSFER OF PARTNERSHIP TO CORPORATION.
   A contract with a partnership, whereby it was to have the use and benefit of complainant's invention, confers no right thereto upon a corporation sub-

v.35F.no.4—19

sequently organized by the partners, who became its sole shareholders; nor does an assignment by the partners of all the property and assets of the firm to the corporation confer upon it any right to use such invention.

6. SAME—RIGHT OF MASTER TO INVENTION OF SERVANT—ASSIGNMENT BY MASTER.

A firm, with which complainant had been employed as a draughtsman, dissolved, and the survivors organized a corporation, taking most of the stock themselves, and assigning to the corporation all the property and assets of the firm. *Held,* that even if the firm, under a custom, acquired the right to the use of an invention made by complainant while in their employ, and afterwards patented by him, the assignment did not give the corporation the right to use the invention

In Equity.. Bill for infringement of patents. On final hearing.

Joseph M. Locke, complainant, filed a bill against the Lane & Bodley Company, defendants, for infringing patents, alleging that he had entered into the employ of the firm of Lane & Bodley, manufacturers of miscellaneous machinery, in 1871, as draughtsman. The firm was then commencing the manufacture of hydraulic elevators, and subsequently made numerous forms of valves for controlling the motion of said elevators, but these valves all proved failures in practical use, and had to be abandoned. Locke brought to the drawing-room of Messrs. Lane & Bodley sketches he had previously made of the device subsequently patented, and from them prepared working drawings, from which drawings valves were made, and put in use by Messrs. Lane & Bodley In February, 1874, Locke left his employment with Lane & Bodley, but previously informed one of the partners he would patent the valve, and hold the firm responsible for any infringements thereon. In 1875 the senior member of the firm of Lane & Bodley asked Locke what royalty he proposed charging the firm. Locke replied, $25. The rejoinder was that such would be satisfactory upon a good patent being obtained. On February 15, 1876, the patent was issued to the plaintiff. In April, 1876, the firm of Lane & Bodley was dissolved, and the corporation of the Lane & Bodley Company formed; all the shares of stock of said company, excepting 30 reserved for sale to employes, being held by the old members of the firm of Lane & Bodley, who had transferred all their transferable rights to the new company On May 20th of the same year (1876) Locke opened up the subject of the valve with Lane, at Philadelphia, but Lane was evasive. Shortly thereafter Locke returned to the Pacific slope, where he had been engaged most of the time since leaving the firm of Lane & Bodley in 1874. In 1880 Locke entered into business relations with the Lane & Bodley Company, representing the company upon the Pacific slope, with headquarters at Salt Lake City. August, 1884, the plaintiff made application to the president of the Lane & Bodley Company for an adjustment of account on valves, which claim he refused to acknowledge or discuss. Thereupon suit was commenced. The Lane & Bodley Company, in their answer, denied the validity of the patent for want of novelty, as being anticipated by previous publication and patents, and that Locke was not the original inventor; also claiming that any patentable feature there may be in said device belongs to them; and subsequently, during the

taking of depositions, they filed an amended answer, on February 2, 1886, setting up a claim that there was an agreement with the plaintiff by which all patentable devices was to be taken out jointly, and they had the option to purchase the exclusive right upon determination of its value by arbitration. The evidence did not sustain these averments, and in the depositions the testimony of complainant and defendant conflicted throughout. The court found for complainant.

*Logan & Slattery,* for complainant.

*L. M. Hosea,* for defendant.

SAGE, J. The complainant sues for infringement of his patent, No. 173,653, dated February 15, 1876, application filed May 27, 1874, for improvement in three-way balanced stop-valves. The invention, which is styled "a new and useful cock for hydraulic elevators," is primarily designed, as is stated in the specifications, "as a means of so controlling the supply and discharge of the water used for impelling hydraulic lifts or elevators as to enable their upward or downward motion or stoppage at any desired level, without such nice attention or manipulation as would be difficult or impossible to an ordinary operator, and without such sudden arrest or resumption of the flow as would endanger the walls of the conduits." The supply and discharge chamber, P, has, on one side of it, a service pipe or passage, C, affording permanent communication with the hydraulic motor or other engine to be impelled. It communicates at opposite ends with two co-axial pipes, Q and L. The pipe, Q, receives the inlet passage, A, and has a tubular prolongation, J, which enters the chamber, P, and has one or more scallops or indentations at its edge, which, narrowing inwardly, as at J, constitute graduated openings. The pipe, Q, has two cup packings; the inner one, R, at the junction of the prolongation, J, with the lower end of the pipe, Q, constituting the seat of the inlet valve. The other packing, R, occupies the outermost extremity of the pipe, Q, and incloses the balancing piston. The inner end of the balancing piston is, by means of a rod, connected to a convex valve, F, which is the inlet valve proper, and is prolonged downward so as to form a cylinder, M. F and M enter and play within R, which therefore serves as the inlet valve seat. M is near its lower end encircled by a packing and discharge valve of India-rubber, leather, or some yielding and impervious material, of such dimensions as to be capable of filling the discharge pipe, L; the interior diameter of which is slightly greater than that of the cylinder, M, as is also the interior diameter of the prolongation, J. The cylinder, M, is prolonged below the packing valve, S, and has one or more notches, *h*, similar in form and function to the notches, (or indentations,) *j*, of the tubular prolongation, J. The distance between the valves, F and S, or, in other words, the length of the cylinder, M, so much exceeds that of the chamber, P, as to secure a sensible or sustained duration, respectively, of the receiving the closed and the discharging conditions of the apparatus, thereby rendering unnecessary such exact movement of the operating rod as would be necessary if the interval between the supply and the dis-

charge were only momentary, or of slight duration. All the prolongations are in the direction of the flow, and the packings, R and S, are so arranged and secured relatively to the notches, $j$ and $h$, as not to come in contact with them, and be torn or mutilated. When the apparatus is closed, if it be desired to elevate the platform, the operating rod is depressed until the convex valve, F, passing into the indented prolongation, J, admits water to the engine, slowly at first, but in constantly increasing quantity, until fully spent; occupation of the discharge pipe, L, by the packing valve, meantime preventing any escape of water from the engine. The platform is brought to rest by reversing the rod, and lowered by elevating it. The specification sets forth that no claim is made to graduated valve openings broadly, nor to any specific form thereof apart from the described special combination with soft or yielding packing without contact. The claims are as follows:

"(1) The chamber, P, having on opposite sides of a permanent service passage, C, two other passages, Q and L, having a common axis, and terminating at said chamber in seats, R and E, for supply and discharge valves, F and S, whose distance apart is greater than that of said seats; said supply-valve and discharge seat being prolonged in direction of the flow, so as to permit independent control of the supply and discharge, and their separation by a period of complete closure, substantially as and for the objects designated. (2) The tubular projection, J, cylinder, M, having graduations, $j$ and $h$, packing, R, and packing valves, S, arranged to operate without attrition from each other, substantially as specified. (3) In combination with the duplex valve, plunger, and the three-way passage, substantially as described, I. claim the balancing piston, N, adopted to operate as set forth."

The defendant contends:

(1) That the complainant's patent is invalidated by the description contained in Rankin's Manual of the Steam-Engine and Other Prime Movers, (5th Ed., London, 1870,) beginning on page 140, of a mine-pumping engine designed by M. Junker. Reference is also made to page 128 of the same volume for description of cup-packing. In the mine engine the piston-valve is shown in the drawing, and described as notched at the edges, in order that the opening and closing of the port may take place by degrees; the water flowing partially through the notches for a short time before and after the piston arrives at the edge of the ports." Conceding that we have here what would anticipate a claim for the graduated valve openings shown in the drawings and described in the specification of complainant's patent, we have only to recall that the complainant expressly disclaimed graduated valve openings, either broadly or of any specific form, excepting in combination, as has already been stated; nor does he claim the cup-packing, excepting in combination. Upon full consideration the court does not find any description in Rankin anticipating complainant's patented improvement. The patents to Dunlap, October 29, 1872, No. 132,526, for improvement in balanced valves, and to Vaughn, September 30, 1873, No. 143,266, for improvement in balanced valves for hydraulic cranes, relied upon by defendant, do not anticipate the complainant's improvement.

. (2) The defendant's second contention is that the complainant's im-

provement does not display invention; that, if anything more than an aggregation of old elements, it is only the product of skill, or, as counsel expressed it, the natural outgrowth of experience with local conditions, embodying mere mechanical modifications of existing and well-known appliances. The court does not concur in this view. The parts of the combination claimed were old, but the combination was new, and it produced a new and useful result. The problem was to produce a valve which would obviate the "water-ram," and relieve against the excessive wear from muddy water. The complainant was, when the improvement covered by the patent in suit was perfected, in the employment, as general designer and draughtsman, of Lane & Bodley, a partnership engaged at the city of Cincinnati in the construction and sale of hydraulic elevators and other machinery. The water-ram could be prevented by the use of various devices, as by the use of graduated openings not differing substantially from that described by Rankin in the work already referred to, or by a disk-valve, described in the testimony. The great difficulty was to overcome the wear and tear of the packing by the gritty particles in the water whenever it became muddy by reason of a rise in the Ohio river, the source of the city's supply. After many trials and failures, the construction patented to complainant was hit upon, and it, and it alone, was satisfactory; and it was satisfactory because of a new, and, therefore, unknown, combination, which was an invention.

The evidence does not sustain the claim that the invention was not the sole production of the complainant, but the joint production of himself and P. P. Lane, senior member of the firm of Lane & Bodley. The burden of proof is upon the defendant. Lane testifies that the notches —referred to in the specification also as "scallops or indentations"—at the edge of the tubular prolongation, J, were determined upon by his direction; that the indication of the change was made upon the drawing by his instruction; and that he thinks, but is not positive, that he made the marks upon the drawing showing the change to be made. Locke denies all these statements, and testifies that he devised his improvement before the time of his engagement as draughtsman with Lane & Bodley. Without entering upon the details of the testimony, it is sufficient to say that the court finds the fact to be that the invention was made by the complainant.

Having found that the improvement displays invention, and that it was made by the complainant, the next question is whether the defendant has established that it has either an indefeasible license or shop-right or an equitable part ownership of the title. This defense is made principally upon the amended answer filed February 2, 1886, the original answer having been filed June 24, 1885. The original answer set up that the improvement was made by complainant while in the employ of Lane & Bodley, under full salary, and under obligation to give to that firm his time and skill in designing, perfecting, and embodying in working drawings, construction, and improvements in machinery, etc., in the line of their manufactures, and that it was carried into public use by them with the full knowledge of complainant, and without his objection, or

claim that it was patentable. The amended answer sets up that it was understood and agreed, as part of his contract of employment, that during its continuance any and all improvements made by complainant, and deemed by said firm patentable should be assigned to said firm and complainant jointly, and that said firm should have the right or option of the exclusive title and ownership of such patents as might be taken upon such invention at a price to be agreed upon or fixed by arbitration, and that complainant acquiesced in the use of said improvement without claiming that it was patentable, or that they were not entitled to its free use; also that complainant, while in their employment, took no steps towards securing letters patent therefor, nor for some time afterwards, and that his application was not filed until more than three months had elapsed after said employment had terminated. The complainant's application for a patent was within two years after his improvement was perfected. The evidence does not establish that he abandoned his invention. The agreement and understanding averred in the amended answer is not made out by the evidence. Lane himself, as a witness, admits that there was no such agreement. It is sought to reach the same result by evidence tending to prove a custom by virtue whereof draughtsmen and designers recognize the right of their employers to the products of their invention. But nothing of the sort is pleaded, and, if it had been, it is not proven. Moreover, admitting the agreement to have been made, or the custom to have been proven, what has either to do with this suit? The firm of Lane & Bodley was dissolved in 1876 by the death of two of its members. The survivors organized the defendant corporation, and this suit is against that corporation, which is entitled to none of the rights claimed of Lane & Bodley. The fact which appears in the record, that the surviving members of the firm of Lane & Bodley, at the date of the incorporation of the defendant company, held all the shares of its stock excepting 30 reserved for sale to its employes, did not identify the corporation with the firm, nor did the assignment by the surviving partners of all the property and assets of the firm to the corporation operate to confer upon the corporation any right to use the complainant's improvement. But it is said that the complainant's suit must fail, and the complainant be remitted to whatever rights he may have at law, by reason of his laches in pursuing his equitable remedy. the estoppel by conduct constituting a waiver of his equitable rights. These propositions are based upon evidence tending to prove that, although complainant knew that the defendant was making, using, and selling his improvement, he made no objection, set up no claim, made no demand for royalties, but was silent and acquiesced until 1884. It is not necessary to consider the evidence, which is conflicting, in reference to the complainant's silence and acquiescence. In any light in which it may be viewed, it is insufficient, upon this whole case, inasmuch as the patent and the complainant's title to it are sustained. *Hapgood* v. *Hewitt*, 119 U. S. 226, 7 Sup. Ct. Rep. 108, disposes of all the other defenses. There is nothing in them. The decree will be for an injunction and account, with costs.